UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EUREKA BUILDING, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF TROY and TROY CITY COUNCIL, <br><br> Defendants. | Case No. 20-10870 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Anthony P. Patti |

**OPINION AND ORDER GRANTING MOTION TO DISMISS [2]**

Eureka Building, Inc. filed two applications to rezone a parcel in the City of Troy from single family use to multifamily use. The Troy City Council denied both applications. Eureka filed this action against the City, asserting that the denial violated Eureka's right to substantive due process and constituted an arbitrary and capricious government action. Eureka seeks injunctive and declaratory relief. The City of Troy now moves to dismiss the action for failure to state a claim. For the reasons that follow, the motion is granted.

**I.**

Eureka Building, Inc. filed two applications to rezone a vacant 1.2-acre parcel in the City of Troy from "One Family Residential" to "One Family Attached Residential" for a townhouse development project. (ECF No. 1-2, PageID.11.) This would allow Eureka to build ten townhouses on the parcel instead of the current maximum of four. (*Id.* at PageID.12.) Eureka's first application was a "conditional" rezoning application, which offered certain voluntary conditions as part of the request. (*Id.* at PageID.13.) The second application was a "straight" or "traditional" rezoning application, which did not attach any conditions beyond simple rezoning. (*Id.*)

Both proposals received approval at every stage of review, until they reached the Troy City Council. The City of Troy Planning Department and City of Troy Planning Consultant recommended approval, and the City of Troy Planning Commission recommended approval after a public hearing. (*Id.* at PageID.11, 13.) But at the final stage of review, the City Council held a public hearing and then denied the conditional rezoning application. (*Id.*) When Eureka applied again several months later with a straight rezoning proposal, city authorities recommended approval, but the City Council again voted to deny the application after a public hearing. (*Id.*)

Eureka acknowledges that City Council members denied the application in response to public concerns that the townhouse development would cause traffic congestion, attract crime, and negatively affect the welfare of the existing neighborhood. (*Id.* at PageID.11; ECF No. 2, PageID.106.) But Eureka believes that both rezoning applications complied with the City of Troy's Master Plan, and that the City treated Eureka differently from other properties that have requested rezoning. (ECF No. 1-2, PageID.12–13.)

Eureka filed suit in Oakland County Circuit Court on March 9, 2020, asserting two claims: the City Council's decision violated its right to substantive due process and the decision was arbitrary and capricious. (ECF No. 1-2, PageID.9, 7–8.) The City timely removed the case to this Court on April 3, 2020. (ECF No. 1.)

The City now moves to dismiss the action for failure to state a claim under Federal Rule of Procedure 12(b)(6). (ECF No. 2.) The City argues that Eureka has no constitutionally protected right to rezone the property because state and local laws grant broad discretion to the City for rezoning decisions. The City further argues that its decision had a rational basis and cannot be construed as the type of "egregious official conduct" that would state a claim for arbitrary and capricious conduct. In support of its argument, the City points to public records, including publicly

available video of each City Council meeting. The City also argues that to the extent that Eureka attempts to assert an equal protection claim, Eureka has failed to state one plausibly (ECF No. 2, PageID.30), but Eureka clarifies that it has not sought to assert an equal protection claim (ECF No. 8, PageID.513).

In response, Eureka argues that the City's decision was unconstitutional as applied because there was no reasonable governmental interest in the City's action, and that the City's decision to deny the rezoning requests was arbitrary and capricious because both proposals satisfied the City's Master Plan. (ECF No. 8.)

## II.

In deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Sixth Circuit has not interpreted this plausibility standard so narrowly as to be the "death of notice pleading," but rather continues to recognize the "viability of the short and plain language of Federal Rule of Civil Procedure 8." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). Accordingly, detailed factual allegations are not required to survive a motion to dismiss. *Id.* (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). But they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Also, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the

case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.

The Fourteenth Amendment of the United States Constitution protects individuals from the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. While the due process clause protects both substantive and procedural rights, Eureka asserts only a substantive due process claim here. A plaintiff alleging a substantive due process violation resulting from a zoning decision is required to show "that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008)). As the Court will explain, Eureka does not and cannot plead either of these requirements based on its allegations.

### A. Property Interest

Whether a plaintiff has a property interest is traditionally a question of state law. *EJS Props.*, 698 F.3d at 855 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution . . . they are created and their dimensions are defined by . . . an independent source such as state law"). Whether that interest "rises to the level of a legitimate claim of entitlement protected by the Due Process Clause" is a question of federal constitutional law. *Id.* at 856 (internal citations and quotation marks omitted). "Resolution of the federal issue

4

begins, however, with a determination of what it is that state law provides." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

For a substantive due process claim, "[a] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *EJS Props*., 698 F.3d at 855 (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)). To establish a property interest in rezoning approval, a plaintiff must demonstrate that the government entity lacked "discretion" to deny the proposed use of the land if the proposal "complied with certain, minimum, mandatory requirements." *Id.* at 856 (quoting *Silver v. Franklin Twp., Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992)).

Eureka cannot plausibly allege that it had any property interest in rezoning approval because Michigan law and the Troy Zoning Ordinance grant total discretion to the City Council to approve or reject a rezoning request. The Sixth Circuit addressed this very question in an unpublished opinion last year, in another case arising from a Troy City Council decision to deny a conditional rezoning application. *See Tollbrook, LLC v. City of Troy*, 774 F. App'x 929, 935–936 (6th Cir. 2019). *Tollbrook* affirmed the dismissal of a substantive due process claim under Rule 12(b)(6) because the property owner lacked a protected liberty interest in its "expectation" that the city would approve a rezoning request permitted under local ordinances because state and local laws granted Troy City Council discretion to decide rezoning applications. *See id.* All relevant state and local laws appear to remain unchanged since that opinion.

As the Sixth Circuit recounted in *Tollbrook*, Michigan law provides that a local government "may approve" a conditional rezoning proposal if certain conditions are met. Mich. Comp. Laws § 125.3405. And the Troy Zoning Ordinance provides that a conditional rezoning "may only be approved upon a finding and determination" that five relevant factors are met: (1) the rezoning is

5

consistent with the city's Master Plan, (2) the rezoning will not cause or increase any non-conformity, (3) public services and facilities will be able to accommodate the new use, (4) the rezoning will not impact public health, safety, or welfare, and (5) the rezoning will ensure compatibility with adjacent uses of land. Troy, Mich., Zoning Ordinance, art. 16.04(C)(3). The use of "may" in this provision makes clear that these factors are necessary but not sufficient for approval, and the ultimate decision is in the city council's discretion. *See Tollbrook*, 774 F. App'x at 935 (citing *EJS Props.*, 698 F.3d at 856) (explaining that "the legislature's use of 'may' authorizes discretionary decisionmaking by local governments."). Eureka's "straight" or "traditional" rezoning application operates the same way. Michigan law provides that a local government "may provide . . . for the manner in which the regulations and boundaries of districts or zones shall be determined and enforced or amended . . ." Mich. Comp. Laws § 125.3202(1). And the Troy Zoning Ordinance applies the same standard to approve "traditional" rezoning applications as for "conditional" applications: "a rezoning may only be approved upon a finding and determination" if the same five relevant factors are met. Troy, Mich., Zoning Ordinance, art. 16.03(C)(3).

Under no circumstances does Michigan law or the city's zoning ordinance *require* the city council to approve a conditional or traditional rezoning application; the decision is wholly discretionary. Eureka does not identify any state or local law that compels approval of a rezoning application if the proposal "complied with certain, minimum, mandatory requirements." *See EJS Props.*, 698 F.3d at 856 (quoting *Silver*, 966 F.2d at 1036). As a result, Eureka has not identified a constitutionally protected property interest in either rezoning decision.

Eureka's briefing skips this essential first step. (*See* ECF No. 8.) Eureka cites a range of different authorities to support its argument that the City violated substantive due process by acting

6

unreasonably, but none address substantive due process in the context of a rezoning application. (*See* ECF No. 8.) Eureka cites, for example, *Dorman v. Twp. of Clinton*, 714 N.W.2d 350, 357 (2006), but there the plaintiff failed to create a factual dispute that the township zoning ordinance amounted to either a de facto or a regulatory taking of his property where plaintiff alleged that a rezoning decision reduced the value of his property.  Eureka cites *Plum Hollow Golf & Country Club v. Southfield Twp.*, 67 N.W.2d 122, 24 (1954), but that case held that a township's refusal to grant a permit effectively compelled the plaintiff to leave its property in a condition that was unusable for any practicable purpose, constituting an unreasonable application of the zoning ordinance. And Eureka cites *Conlin v. Scio Twp.*, 686 N.W.2d 16, 26 (2004), but that case does not assist Eureka either. *Conlin* concluded that a zoning ordinance had a rational basis where plaintiffs could not show that density restrictions were based 'solely on reasons totally unrelated to the pursuit of the State's goals," and could not "negative [sic] every conceivable basis which might support" the restrictions. *Id.* Indeed, nearly all of Eureka's cited cases involve challenges to existing zoning ordinances, which is not the situation here. Eureka acknowledges in its complaint that current zoning allows Eureka to build four townhouse units on the property; the rezoning application sought to build ten units. (ECF No. 1-2, PageID.12.) And although Eureka copies verbatim the substantive due process rule statement from *EJS Properties* in its brief (*see* ECF No. 8, PageID.506)—correctly citing the controlling published Sixth Circuit authority for this type of claim—Eureka fails to discuss how *EJS Properties* applies here. Perhaps because it is fatal to Eureka's claim.

Eureka does not attempt at any point to explain how it could have a property interest in a rezoning decision that is wholly discretionary under state and local law. Instead, Eureka proceeds to argue that the City Council's decision was unreasonable. (*Id.* at PageID.507–511.) But the

merits of the zoning decision are irrelevant if Eureka lacks a constitutionally protected property interest. *See EJS Props.*, 698 F.3d at 856.

Eureka further argues that the City has failed to explain "why the denial of the request was necessary to preserve health, safety, morals and general welfare." (*Id.* at PageID.510.) But Eureka has misunderstood the zoning ordinance. Maintaining public health, safety, and welfare is necessary for rezoning approval; it is not sufficient. *See* Troy, Mich., Zoning Ordinance, art. 16.03(C)(3); 16.04(C)(3). The ultimate decision is wholly discretionary and left to City Council. *Id.* "The law is clear that a party cannot have a property interest in a discretionary benefit." *EJS Props.*, 698 F.3d at 857 (citation omitted).

In sum, because state and local law do not create a constitutionally-protected property interest in a discretionary rezoning decision by the Troy City Council, Eureka cannot plausibly allege a constitutionally protected property or liberty interest to state the first element of a substantive due process claim. *See EJS Props.*, 698 F.3d at 855–856.

### B. Arbitrary and Capricious Action

Arbitrary and capricious action is the second element of a substantive due process claim arising from a zoning decision. *EJS Props.*, 698 F.3d at 856. In some circumstances, an arbitrary and capricious action can stand alone to state a substantive due process claim without first establishing a protected interest—a so-called "shocks-the-conscience" claim. *Id.* at 861–62; *Tollbrook*, 774 F. App'x at 936. It is not entirely clear from Eureka's complaint whether Eureka intends to assert arbitrary and capricious action as a separate "shocks the conscience" claim, or whether it merely makes this allegation as the second step of a substantive due process claim. Regardless, Eureka has failed to plausibly allege arbitrary and capricious conduct. As the Court will explain, a "shocks the conscience" claim is not available in the Sixth Circuit for rezoning

claims that do not establish a constitutionally protected property interest. And even if a freestanding "shocks the conscience" claim were available for a rezoning case, Eureka's complaint does not include any factual allegations to support that claim. Finally, public records contradict Eureka's entirely conclusory argument that the City Council's decisions were arbitrary and capricious.

A freestanding "shocks the conscience" claim for arbitrary and capricious action is not available in a case based on discretionary rezoning decisions. The Sixth Circuit has repeatedly stated that "in the context of a discretionary zoning decision, government action will not shock the conscience unless the arbitrary and capricious action touches on a protectable interest." *EJS Props.*, 698 F.3d at 862; *Tollbrook*, 774 F. App'x at 936; *see also Guertin v. State*, 912 F.3d 907, 922 n.5 (6th Cir. 2019) (quoting *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011) ("'A plaintiff must demonstrate a deprivation of a constitutionally protected liberty or property interest in order to establish a due process violation based on discretionary conduct of government officials,' unless the matter involves a constitutional challenge to a state law.") (subsequent history omitted). So because Eureka cannot plausibly allege a constitutionally protected property interest, as detailed above, Eureka cannot state a claim for a violation of substantive due process arising from the City Council's denial of its rezoning applications. *See EJS Props.*, 698 F.3d at 862 (affirming grant of summary judgment and explaining: "Because EJS had no protectable interest, its substantive due-process claim must fail."); *Tollbrook*, 774 F. App'x at 936 (affirming grant of dismissal under Rule 12(b)(6) for substantive due process claim without evaluating merits of plaintiff's "arbitrary and capricious" argument where plaintiff failed to allege a protected property interest).

9

Even if the law permitted Eureka to allege a freestanding claim without a constitutionally protected property interest, Eureka's complaint does not allege any conduct by the Troy City Council that would plausibly "shock the conscience." Conduct that "shocks the conscience" sits at a high bar. For example, "solicitation of a bribe by a public official does not shock our collective conscience." *EJS Props.*, 698 F.3d at 862 (finding that even if a protected property interest is not required for substantive due process claim, EJS's claim that a city councilmember opposed rezoning after EJS refused an alleged demand to donate $100,000 to a local retirement fund did not "shock the conscience"). Similarly, "a citizen does not suffer a constitutional deprivation every time he is subject to the petty harassment of a state agent." *Id.* (citing *Vasquez v. City of Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985) (finding allegation that police officer maliciously wrote false parking tickets in retaliation against plaintiff did not "shock the conscience")). Eureka does not make any allegations that would even approach this level of conduct. In its complaint, Eureka alleges that the City Council "denied the Rezoning Request without advancing any reasonable Governmental interests" (ECF No. 1-2, PageID.12), the City Council "denied the conditional rezoning after neighbor complaints without advancing any reasonable governmental interests just as they did subsequently with the rezoning request" (*id.* at PageID.13), "the denial of the rezoning application violated Plaintiff's right to substantive due process" (*id.*), the City Council "treated Plaintiff's property differently than other properties that have sought rezonings" (*id.*), "[t]he current R1C zoning of the parcel is unreasonable and unconstitutional" (*id.* at PageID.14), and "[t]he decision to deny the request to rezone was arbitrary and capricious" (*id.*). None of these allegations make specific claims that would shock the conscience. And Eureka makes no other allegations that would support those claims.

Moreover, even if Eureka's complaint were not so lacking, undisputed public records prevent Eureka from plausibly alleging that the Troy City Council's decision was arbitrary and capricious. The Court has reviewed the minutes (ECF No. 2-8, ECF No. 2-13) and video of the two City Council meetings at issue: the meeting on July 8, 2019, regarding the first, conditional rezoning application, *City Council Meeting* (Jul. 8, 2019), https://perma.cc/3337-67ZR, and the meeting on February 10, 2020, regarding the second, "traditional" or "straight" rezoning application, *City Council Meeting* (Feb. 10, 2020), https://perma.cc/BA3F-MU9T. (The Court may consider these public records because Eureka refers to these meetings directly in the complaint (ECF No. 1-2, PageID.11–13), the City attaches them to its motion to dismiss (ECF No. 2, PageID.109 n.2, PageID.110 n.3; *see also* ECF Nos. 2-8, 2-13), and they are central to the claims at issue. *Bassett*, 528 F.3d at 430. Eureka also does not object to the public record exhibits and jointly relies on one of them. (*See* ECF No. 8, PageID.512.))

These undisputed public records make clear that Troy City Council members denied both of Eureka's rezoning applications for a variety of reasons based on public health, safety, and welfare, consistent with their authority under the city zoning ordinance. *See* Troy, Mich., Zoning Ordinance, art. 16.03(C)(3); 16.04(C)(3).

At the first hearing, on July 8, 2019, regarding the conditional rezoning application, the City Council heard public comment from 23 residents in opposition to the proposal, and zero residents in support. (ECF No. 2-8, PageID.344.) City Council members then shared their views. One councilmember expressed concerns that the residential development had no sidewalks, limited parking (just 23 total parking spots for ten units with two or three bedrooms each), and that the property was located on a "cut through street" through a residential area with traffic issues. *City Council Meeting* (Jul. 8, 2019), https://youtu.be/GfQ3GV_j9YU (1:48:00–1:51:01). Another

11

councilmember agreed that drivers frequently sped 40 to 50 miles per hour on the residential street and that the proposal did not "fit the area," but noted the city council's responsibility to ensure affordable housing and advised Eureka that "residents are receptive to a smaller project." *Id.* at (1:51:02–1:54:00). Another member requested and received confirmation that notice requirements under the Michigan Zoning Enabling Act and zoning ordinance were followed and requested clarification from the City about parking requirements. The city representative confirmed that their general recommendation is four parking spots per unit plus three visitor spaces. (1:54:00–1:57:00). The same councilmember even expressed concern that the Master Plan may need revision to better reflect priorities of residents in order to protect developers from investing a great deal of money only to be denied approval: "our master plan seems to be a little out of step with some of the residents in the neighborhood . . . the master plan maybe needs to be fine-tuned . . . [so] we are not having developers invest a ton of money to get to a process where it may be not the result they were hoping for . . . a year later." *Id.* at 1:57:00–2:02:12. He continued: "we can't deny when you have 20 people come up and worry about their children walking in the streets, their pets. . . we have to listen to that." *Id*. at 2:05:00-2:05:10. And the same councilmember compared Eureka's proposal with a prior proposal, known as the McClure project, and observed: "it's a very similar safety concern that I do know is legitimate . . . we're elected to represent our residents and hear and understand and balance your input against the law." *Id.* at 2:05:40-2:08:05. He concluded that safety was his "number one concern." *Id.* Another councilmember noted that he had voted yes on two prior townhouse development projects, but those fit with street and traffic flows in a way that Eureka's proposal did not. *Id.* at 2:10:25-2:12:50. After a series of similar comments, the City Council voted unanimously to deny the application for conditional rezoning. (ECF No. 2-8, PageID.345.)

On February 10, 2020, the City Council considered the second, "traditional" or "straight" rezoning application. This time, City Council heard public comment from nine residents in opposition to the proposal, and zero residents in support. (ECF No. 2-13, PageID.456.) Councilmembers expressed the same concerns from the previous meeting. *City Council Meeting* (Feb. 10, 2020), https://youtu.be/qOxu2jZ-VHU (1:43:12–2:03:03). One councilmember stated: "consistent with the same reasons I voted no on [the conditional proposal], I'm gonna vote no now for the same concerns, the traffic, the lack of sidewalks on that street." *Id.* at 1:43:12-1:43:55. One councilmember suggested that Eureka had not attempted to address any of the concerns raised by residents or City Council at the prior meeting: "[I]t doesn't seem that they . . . listened to any of the concerns of residents or Council or made any adjustments to the proposal, so there's still the same concerns . . . about the health safety and welfare of residents, traffic concerns, no sidewalks, children trying to get school, buses, bicycles." *Id.* at 1:43:53-1:44:40. "[S]o," the councilmember continued, "I don't see how this situation is any better than it was when it first came before council." *Id.* Another councilmember noted that a new traffic study and speed study were conducted, but still opposed the proposal: "while the volume of traffic . . . might be relatively modest, when there is an acknowledged speed issue, it's difficult for me to support an increase in density." *Id.* at 1:44:35-1:45:23. The City Council voted unanimously to deny the application for traditional rezoning. (ECF No. 2-13, PageID.456–457.)

In other words, the public record shows that City Council considered the proposal, heard public comment that was unanimously opposed to the development, and evaluated the proposal's impact on public health, safety, and welfare, consistent with their authority under the city zoning ordinance. City Council members articulated multiple factual bases for their decision and referenced the applicable statutory grounds for approval—public health, safety, and welfare.

13

Nothing in this record "shocks the conscience," and Eureka does not make any other allegations that would alter this impression. While Eureka may disagree with the City Council's reasoning, the undisputed public record indicates nothing arbitrary or capricious about the City Council's decision to deny each of Eureka's applications.

## IV.

Eureka has not filed an amended complaint in response to the City's motion as it was entitled to do under the Federal Rules, *see* Fed. R. Civ. P. 15(a)(1)(B), and Eureka has not requested leave to amend from the Court, *see* Fed. R. Civ. P. 15(a)(2). Further, the Court believes that any amendment would be futile. The rezoning approval at issue here is wholly discretionary under state and local law, and the Sixth Circuit has made clear that for a substantive due process claim, "[a] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *EJS Props.*, 698 F.3d at 855. And public records provide clear documentation that the City Council's decision not arbitrary and capricious.

For the foregoing reasons, the Court GRANTS the City of Troy's motion to dismiss (ECF No. 2) with prejudice.

SO ORDERED.

Dated: November 24, 2020

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE